ULTIMA THULE, ARKADELPHIA & MISSISSIPPI RAILWAY COMPANY v. CALHOUN.

Opinion delivered June 24, 1907.

1. MASTER AND SERVANT—DEFECTIVE CONDITION OF MACHINERY.—A master will be liable for the death of a servant caused by the explosion of a locomotive whose defective condition would, by the exercise of due care, have been known to the master upon making the proper tests. (Page 321.)

2. SAME—SUFFICIENCY OF PROOF OF NEGLIGENCE.—A verdict holding a railroad company liable for the death of an employee in a locomotive explosion will be sustained where there is substantial testimony that the boilers of the locomotive were weakened by crystallization, that the hydraulic test would have disclosed this weakness, and that no such test was ever applied, though the locomotive was old and had long been in constant service. (Page 322.)

3. SAME—DUTY TO INSPECT MACHINERY.—A railroad company fulfils its duty to its servants in regard to the inspection of its machinery if it adopts such tests as are ordinarily in use by prudently conducted roads engaged in like business and surrounded by like circumstances. (Page 323.)

4. TRIAL—ARGUMENT OF COUNSEL.—Where plaintiff sought to recover for the killing of an employee of defendant in a boiler explosion, upon the ground that defendant was negligent in failing to make a certain

test of the boiler, it was not improper for plaintiff's counsel to refer to the fact that immediately after the accident in which deceased was killed defendant resorted to such test as showing that defendant knew of the efficiency of such test. (Page 324.)

Appeal from Clark Circuit Court; *Joel D. Conway*, Judge; reversed in part.

*Thomas B. Morton* and *John H. Crawford*, for appellants.

1. As to the Arkadelphia Lumber Company, there is nothing in the evidence to show any liability on its part.

2. The master is not an insurer of the safety of the servant, and negligence will not be presumed, but the burden of proof rests upon the party pleading it. Before recovery can be had, the negligence charged must be shown to have been the proximate cause of the injury; and no presumption of negligence arises from the happening of the accident. 70 Ark. 481; 76 Ark. 436; 79 Ark. 437; 80 Ark. 68; 79 Ark. 608.

An injury which could not have been foreseen or reasonably anticipated as a probable result of the negligence is not actionable. 55 Fed. Rep. 949.

It is not enough that the plaintiff show that he has sustained an injury under circumstances which may lead to a suspicion or even a fair inference that there may have been negligence on the part of the defendant. He must show some specific act of negligence. Black's Law & Pr. in Accident Cases, 214; 29 Vroom (N. J. L.), 659; 113 N. Y. 378; 29 Barb. (N. Y.) 226.

3. The second instruction was abstract, as applied to the evidence, and there was no testimony that the boiler was crystallized to such an extent as to be unable to bear the full amount of steam pressure it was designed to bear. 80 Ark. 260.

4. The fourth instruction asked for by defendant should have been given without modification. There being no testimony to show what "prudent" railroads do, the instruction was rendered abstract by the modification.

5. It was error to permit counsel for appellee, over appellant's objection, to argue to the jury that appellant railroad company virtually admitted the efficiency of the water test by resorting to it after the explosion. Overruling the objection to such improper argument sent it to the jury with the force of an instruction.

It is improper to attempt to show negligence by proof that after an accident the defendant had performed some act which it was contended it was negligence not to have done before.  70 Ark. 179.

*McMillan & McMillan* and *Murphy, Coleman & Lewis,* for appellees.

1.  The age and condition of the engine was sufficient to put appellants on notice that prudence and due regard for the safety of employees required inspection.  No test was made, though it is certain that the water test would have disclosed its weakness and averted the injury.

· "If the railway company omitted any test of the soundness of its boiler that ought to have been made, it was guilty of negligence."  44 Ark. 529; 67 Ark. 306; 51 Ark. 467; 82 Ark. 372.

2.  The modification of appellant's fourth instruction was proper.  It is a standard of care to which all railroads should be held.  166 U. S. 618.

3.  The argument of appellee's counsel was legitimate and warranted by the evidence brought out by appellants.

HILL, C. J.  This is a suit by Mary E. Calhoun in her own right and as next friend of her minor children against the Ultima Thule, Arkadelphia & Mississippi Railway Company and the Arkadelphia Lumber Company, for the death of her husband, P. J. Calhoun, which was caused, as she alleged, by the negligence of said companies.  She recovered judgment for $5,000, and the companies have appealed.

It appears that these two companies are owned by practically the same individuals.  They are separate corporations, however closely connected.  Some employees are in the common employ of both, and some are changed from one corporation to the other from time to time.  The Lumber Company seems to be the paymaster for both companies.  Calhoun had been in the employ of the Lumber Company, and was transferred to the Railway Company, and at the time of his death was working as machinist helper, and was killed by the explosion of a locomotive.  There is not sufficient evidence that Calhoun was in the employ of the Lumber Company, and the judgment as to the Lumber Com-

pany is reversed, and this cause considered solely between the Railway Company and the appellee.

The engine had been in use by appellant railway company for about ten years, and had been bought as a second-hand engine then. The boilers were of iron—a method of locomotive construction which has not prevailed for the past fifteen years. It had been constantly in use by this road, but had been kept in good condition, and there had been no serious complaints of it. Nearly two years before the accident it had been in the repair shop, and had been thoroughly overhauled, and its boilers tested with the hammer test, and had been placed in as good condition as an engine of its age could be. For about two weeks prior to the accident it had been in the shop for repairs to a swang in one of the back tires. Some other incidental repairs were made at this time; and it had just been run out of the shops when it exploded with terrific force, killing Calhoun who in the discharge of his duties happened to be standing right by it.

The court sent the case to the jury upon this issue, which was presented in the second instruction, as follows:

"If you believe from the evidence that from time and long use the sheet and barrel of the boiler had become crystallized, either wholly or in part, and thereby weakened to the extent that it was unable to carry or resist the full amount of steam pressure it was originally designed to carry and resist, and this fact was known to the defendant or their officers or employees in charge, or could and would have been known to them by the exercise of ordinary care and diligence on their part, and that from and by reason of such crystallized and weakened condition, the boiler exploded and killed deceased, you should find for the plaintiffs."

The serious question of the case is whether there was evidence sufficient to sustain a verdict under this instruction. There was evidence that the iron of the boiler along the line where the explosion occurred had become crystallized, and that crystallization took the life out of iron and weakened it. The consensus of opinion among the experts seems to be that the hammer test would not disclose weakness from crystallization.

Two of the witnesses on behalf of appellee, who are boiler makers and familiar with tests of boilers, testified as to the

pressure test, which is made by filling boilers with water to the full extent of the steam capacity, and if there is weakness in the boiler it will then be developed without injury to any one. They say that 145 pounds of water is equal to 190 pounds of steam pressure. This test had never been made on this engine during its ten years of use by appellant. And no test of the soundness of the boilers was ever made except they were tested with the hammer nearly two years prior to the accident.

There was strong evidence adduced on behalf of appellant showing that the tensile strength of specimens taken from along the line of the rupture, notwithstanding its crystallization, was greater than the steam pressure required; and that a rupture, not an explosion, would be the result of weakness from crystallization. This evidence, however, while of strong probative force, does not prove that there were no other portions of the boiler so weakened by the crystallization that they could not stand the required steam pressure and exploded from it. The condition of the engine, as developed by the description of witnesses and the photographs of it, would indicate that the explosion was of terrific force—probably of more force than the utmost steam pressure of this engine could have caused, and it was proved that the steam pressure at the time of the explosion was within the limit. However these were all questions of fact representing the varying views of witnesses qualified to speak. The court is unable to say in this case, as it was in *Waters-Pierce Oil Co.* v. *Knisel,* 79 Ark. 608, that the oral testimony is against the physical facts and scientific demonstration. There is some substantial testimony that the boilers were weakened by crystallization, and that the hydraulic test would have discovered this weakness, and that this explosion could have resulted from such weakness, and that no such tests were ever made on this engine, although it was of antiquated pattern and long in constant service. Therefore the instruction was correct, and there is sufficient evidence to sustain a verdict under it. What was said in *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Brown,* 67 Ark. 295, is peculiarly applicable here: "But there is a time when it is the duty of a railroad company to inspect its machinery and other appliances for the purpose of discharging its obligation to use due care in keeping the same in good repair. It is bound to take notice of

the liability of its tools and machinery to decay from age and to wear out by use, and to protect its servants against such contingencies by inspection at reasonable intervals for the purpose of ascertaining what repairs are needed, and for a failure to discharge this duty is liable to the servants for damages." An application of this doctrine to the explosion of a boiler was made in *Texas & P. Ry. Co.* v. *Barrett*, 166 U. S. 617, which is much in point in regard to the facts of this case.

2. The court gave the following instruction: "The jury is instructed that the defendant's duty to plaintiff's intestate did not require it to resort to unusual or impractical tests; and if the jury finds from the evidence in this case that the defendant railway company, in the inspections, examinations, etc., used by it to discover defects and weakness in its locomotive boilers, used all the ordinary tests usually applied by prudent railroad companies, then and in that event their verdict should be for the defendant."

This instruction was requested by the defendant, but not in the form given by the court. The last clause in the requested instruction read: "Usually applied and observed by similar short-line railroad companies in the operation of such roads," etc., which the court changed to, "usually applied by prudent railroad companies," etc.

The Supreme Court of the United States in the Barrett case, 166 U. S. 617, *supra,* said that the company fulfils its duty in regard to inspection "if it adopts such tests as are ordinarily in use by prudently conducted roads engaged in like business and surrounded by like circumstances." This statement of the law is approved by Thompson. 4 Thompson on Negligence, 3926. This instruction might well have been qualified by making it read: "usually applied by prudent short-line railroads in like business and surrounded by like circumstances to defendant." But this latter qualification was not asked, and the instruction is correct as given, and would have been incorrect if given in the form asked, because then the test would have been what was usually applied and observed by similar short-line railroads in the operation of their roads, whether prudent or imprudent. It might be that short-line railroads were all reckless; but that would not excuse any one of them of its duty to its employees.

They must be prudent in the management of their affairs; but their prudence may be tested by the business they are engaged in, and the circumstances surrounding it and commensurate to its requirements.

3. Finally, it is argued, that remarks of counsel for appellee were prejudicial, in that he argued that immediately after the explosion the management of the railroad company applied the hydraulic test for the purpose of supplying themselves with evidence. It was developed by the appellant in the examination of Mr. Peters, who was the machinist in charge of the shops, that after the explosion, in his examination of the engine, he applied the water test to the safety valves in order to find if there were any weaknesses in them, and that he found them to be sound. This evidence was brought out by the appellant in showing that the engine was in good condition and under proper management at the time of the explosion. On cross-examination Mr. Peters was asked if he had knowledge of the water test to determine the strength of boilers as well as valves, and he admitted that he did. Counsel for appellee argued that the water test of the boilers should have been resorted to by the railroad company in their examination of the engine while in the shops; and he pointed to this evidence to show that the machinist in charge of the repair-shops had knowledge of the efficiency of the water test in determining weaknesses in boilers and valves. This argument does not offend against the principle announced in *Prescott & N. Ry. Co.* v. *Smith*, 70 Ark. 179, and was legitimate.

Judgment is affirmed as to the railway company, and reversed as to the lumber company.