MAMMOTH VEIN COAL COMPANY v. LOOPER.

Opinion delivered July 13, 1908.

| 87 | 217 |
| f87 | 196 |
| f87 | 325 |

1.  MASTER AND SERVANT—SAFE PLACE TO WORK.—It is the duty of the master to exercise care in furnishing a reasonably safe place in which the servant is required to work, and in discovering defects and repairing them; and this care must be tested by the business in which the servant is engaged and the circumstances surrounding it.  (Page 219.)

2.  SAME—NEGLIGENCE—BURDEN OF PROOF.—The burden is on a servant suing the master for failure to exercise due care in furnishing a safe place to work to show negligence on the master's part, and this negligence cannot be inferred merely from the occurrence of the injury.  (Page 219.)

3.  SAME—NEGLIGENCE—SUFFICIENCY OF EVIDENCE.—Where a miner was engaged in digging coal in a room in a mine and was directed to remove a prop at the entry in order to permit a car to enter the room, and was injured by reason of a rock falling from the roof when the prop was removed, the jury were authorized to find that the master was negligent in failing to keep the roof in safe condition.  (Page 220.)

Appeal from Sebastian Circuit Court, Greenwood District; *Daniel Hon,* Judge; affirmed.

*Read & McDonough,* for appellant.

1. The court should have given a peremptory instruction in favor of appellant. The burden of proving negligence on the part of appellant was on the appellee. 79 Ark. 440. The hap-

pening of the accident does not warrant the finding of negligence. 101 S. W. 738. The falling of the rock is of itself no evidence of the master's negligence. 82 Pac. 387.

2. Appellee is shown to be an experienced miner. He voluntarily undertook to put his room in a condition that a car could be taken out. He assumed the risk. Not only so, but under the facts in evidence he is also barred of recovery by his own contributory negligence. 58 Ark. 177; 77 Ark. 367; 104 S. W. 174; 77 Ark. 290; 79 Ark. 439; 125 Ill. App. 622; 153 Fed. 358; 90 Pac. 433; 152 Fed. 417; 66 Atl. 576; 102 S. W. 740; 65 Atl. 1075. It is the duty of the servant to inform himself of the situation and of the risks incident to the work he is going to perform; and where the danger is obvious, or where he has same or equal means of knowing the danger as the master, he assumes the risk. 100 S. W. 83; 67 Atl. 148; 57 S. E. 1041. He assumes the risk of dangers which he might have discovered by ordinary examination. 67 Atl. 177; *Id.* 343.

*Jesse A. Harp,* for appellee.

HILL, C. J. Looper was a coal miner, working in the mine of the appellant company, and was injured by a rock falling from the roof in an entry. He brought suit against the company and recovered judgment, and the company has appealed.

The principal question argued is the sufficiency of the evidence to sustain the verdict. The coal company introduced no testimony, and the case was tried on the evidence introduced by the plaintiff, which showed this state of facts: Looper was engaged in digging coal in a room on the second east entry, and, owing to a prop sustaining the roof being placed in the entry where the mine track turned into his room, the mine cars were unable to get into his room to carry out his coal. On the morning of the accident he made repeated demands for cars, and one was taken into his room by lifting it off the track; and when it was loaded, and he desired to send it out, it could not be taken out on account of this prop. He made demand for the prop to be removed, and the mine foreman sent word to him to do it himself. He then went under the rock supported by the prop in order to change its location, but before he had done anything the rock fell upon him, and injured him.

The evidence shows that it is the duty of a mine owner to keep the entries in safe condition, and it is the duty of the miner to care for his room, as he is constantly changing its roof and face in doing his work. The rock supported by the prop which fell, while not in the direct path of the miners in using the entry as a passage way of the mine, was in the entry, and the proper care of the whole entry was the duty of the master.

Looper testified that he did not know that the rock was dangerous, that he had never noticed it, and had made no test of it to ascertain whether it was loose. He had not got ready to examine it nor begun his work when it fell. He described it as it appeared after it had fallen as follows: "The rock seemed to be a water-slip rock; water run over the rock; could see kind of settlings on it; yellowish settlings; something like copperas; showed that the water had been running over it for sometime."

The other witness, who was a driver in the mine, and had carried the car into Looper's room, testified that he had not noticed the condition of the rock before it fell, but he described it as he saw it after it had fallen as a flat rock and a "water-slip" rock.

What was said in *St. Louis & S. F. Rd. Co.* v. *Wells,* 82 Ark. 372, applies here. "The only question is whether the evidence showed a defect which the defendant could, by proper inspection, have discovered, for under no other circumstances could it be held responsible for the injury which resulted. Negligence of the company can not be inferred merely from the occurrence of the accident. That must be proved, and the burden of establishing it is on the party who alleges it;" citing authorities.

In *St. Louis, I. M. & S. Ry. Co.* v. *Andrews,* 79 Ark. 437, it was said: "It is the duty of the master to exercise care in furnishing a reasonably safe place in which the servant is required to work, and to exercise ordinary care in discovering defects and in repairing them. The burden is upon the injured servant to show negligence on the part of the master in this regard before recovery can be had for the injury. Nor can negligence be inferred merely from the occurrence of the injury."

In performing the duty of inspection, the master must use ordinary care and prudence to see that the working place is safe;

and this care and prudence must be tested by the business in which he is engaged and the circumstances surrounding it and commensurate to its requirements. *Ultima Thule, Ark. & Miss. Ry. Co.* v. *Calhoun,* 83 Ark. 318.

Applying these settled principles to the facts at bar, it can not be said that the jury was unauthorized to find a lack of care commensurate to the duty required of the company to provide a safe roof for the entry. All parts of the entry were a passage way for the miners; it mattered not that they did not usually pass under this rock. It was over their passage way; and Looper was sent there, not to repair a dangerous place, but merely to change the location of the prop in order that the car might pass into his room. This being in the entry way, he had a right to assume that the master had exercised care in keeping the roof in a safe condition, and his going under it without a knowledge of its dangerous condition was no more an assumption of the risk than if he had passed under it going into his room to dig coal.

The condition of the rock—a "water-slip" rock, as described by the witnesses—was sufficient to justify the jury in believing that, had the company made proper inspections of the place, in order to perform their duty of seeing that the roof was safe, the dangerous condition of this rock would have been discovered before Looper was sent under it to make the change in the location of the prop. The question of fact here is not unlike that in *St. Louis & S. F. Rd. Co.* v. *Wells,* 82 Ark. 372; *Ultima Thule, Ark. & Miss. Ry. Co.* v. *Calhoun,* 83 Ark. 318; *Kansas City Southern Ry. Co.* v. *Henrie, post,* p. 443.

The instructions, which may be found in the footnote*, were in accord with the principles herein quoted and referred to, and fairly presented the case to the jury. The evidence was sufficient to sustain the verdict, and the judgment is affirmed.

---

*The court on its own motion gave the following instructions:

"1. The presumption is that the mine owner, the defendant here, has done its duty by furnishing a safe place for its employee, the plaintiff; and if the place furnished for the plaintiff's employment was not safe and was defective, there is a further presumption that defendant had no notice of the defect, and was not negligently ignorant of it, and it devolves upon the plaintiff to show that the mine in which the alleged injury occurred was not safe, and the defendant had knowledge

KEMPNER *v.* GANS.

Opinion delivered June 15, 1908.

1. FRAUDS, STATUTE OF—AUTHORITY TO SELL LANDS.—A contract for the employment of an agent to find a purchaser of lands is not within the statute of frauds. (Page 227.)

2. REAL ESTATE BROKER—POWER TO SELL LAND—MISDESCRIPTION.—Where, by mistake, a power of attorney impowered brokers to sell a lot 70 x 70 feet, instead of 70 x 75 feet, the misdescription was not material if the writing otherwise sufficiently identified the entire tract as intended to be sold. (Page 227.)

3. SAME—EXTENT OF POWER.—In the absence of special authority or custom to the contrary, an agent authorized to sell land has no implied authority to sell on credit. (Page 227.)

4. SAME—CONSTRUCTION OF CONTRACT.—Where brokers, authorized merely to sell lands without authority to sell on credit, arranged for part of the purchase money to be paid in cash and the balance to be arranged to the satisfaction of the owners, the purchase money was payable on demand at the owner's option, and the contract was enforceable against them. (Page 228.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; reversed.

STATEMENT BY THE COURT.

Gus. M. Gans and Sol Gans owned the land in controversy, which was business property on Second Street in the city of Little Rock, having a frontage of 70 feet and running back 75 feet, containing a two-story building numbered 207, 209 and 211 West Second Street. They authorized Raleigh & Morris, real estate agents, to sell the same, which was evidenced by the following writing:

---

of it, or by the use of ordinary care and inspection could have had knowledge of it.

"2. If the plaintiff was not engaged in the mining of coal, but was engaged in or preparing to remove props or timbers at the time of the alleged injury, he assumed the risk, and defendant would not be liable."

And upon motion of the plaintiff the court instructed the jury as follows:

"1. It was the duty of the defendant to exercise ordinary care to keep the roof of the entry or approach into the room where plaintiff was injured in safe condition as passageways for its employees.

"2. It was the duty of the plaintiff to inspect the roof of the entry

## "RALEIGH & MORRIS.

### "CONTRACT.

"I hereby give Raleigh & Morris, real estate agents and dealers, Little Rock, Arkansas, the exclusive sale of the property described herein for thirty days from this date at prices and on terms named below:

"Description and Location—70 feet on West Second Street, between Louisiana and Center Streets, south side, being 70 feet by 70 feet, with two-story brick building.

Size of Lot—70 x 70 feet.

Rents.........................No. Rooms...................
No. Stories...................City Water..................
Sewerage.....................Bath Room..................
Gas..........................Barn.......................
Insurance....................

"Not to be advertised.

Price, $35,000.00.

Terms .......................................................

"When sale is made, I agree to pay Raleigh & Morris a commission as follows:

"All over $35,000.00.

[Signature]   "Gus and Sol Gans, Owner.

"Address.......................

"Date, January 12, 1907."

"Balance of purchase money to be paid on delivery of war- Kempner, received from him one hundred dollars, and executed therefor the following writing:

---

or approach into the room where he regularly worked, and he had a right to assume that it was kept in proper condition by the defendant.

"3. If you find from the evidence that the roof of the entry or approach into plaintiff's room where he was hurt was unsafe and dangerous, and that defendant's mine foreman knew it, or by the ordinary exercise of care could have known it, then it was negligence for defendant to permit plaintiff to pass or work under the same without warning him of the condition.

"4. If the roof of the entry or approach into plaintiff's room was unsafe and dangerous, and defendant's mine foreman knew it before plaintiff went under it, and while under it, without knowledge of its danger, was injured by the fall of rock from the roof, then you will find for the plaintiff.

"5. Where a servant is ordered by his master to leave his regular work and change temporarily in other duties not in the line of his

"January 30, 1907.

"Received of Ike Kempner one hundred dollars, part payment on property Nos. 207, 209 and 211 West Second Street, Little Rock, Arkansas, being 70 feet front by 75 feet deep. Price to be $35,500.00, payable $10,000.00 cash and balance to be arranged to satisfaction of owners.

"Balance of purchase money to be paid on delivery of warranty deed and abstract showing good title.

(Signed)        "Gus and Sol Gans,

"By Raleigh & Morris, Agents."

There was uncontradicted evidence showing that it was always customary for the seller to furnish an abstract of title brought down to date. After the sale Sol Gans was notified of it, and asked what rate of interest he would charge on the purchase price above $10,000.00, and he said he wanted seven per cent. The broker wanted him to make it six, and Gans told him he would talk with his brother about it, and for the broker to come back in the afternoon. After the conference of the brothers they notified the broker that they had decided not to sell the property. Gans told Kempner that they had changed their minds. Kempner tendered Gans $35,500 in currency, which tender was refused, and this suit was then brought for specific performance, and the chancellor found for the defendants. Kempner has appealed.

*Morris M. Cohn* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. Appellant rigidly complied with the contract; but, if there had been some slight omission in the matter of making

---

regular employment, the servant has a right to rely upon the assurance which the law implies from the giving of said order that the place of work is reasonably safe, and in such a case the servant need not inspect such a place.

"6. If you find for plaintiff, you will assess his damage at a sum which in your judgment under the evidence will compensate plaintiff for the pecuniary loss he has suffered by the reason of the injury, and in determining that you will take into consideration what he expended for medical aid together with his loss of time occasioned by the injury, and you will also consider his claim for damages on account of mental anguish, pain and suffering undergone by him caused by the injury, and award him such sum, in addition to his pecuniary loss, as in your judgment under the evidence will offset said mental anguish, pain and suffering, in a sum not greater than that claimed by him in his complaint." (Rep.)