HEARD *v.* ARKANSAS POWER & LIGHT COMPANY.

4-6199                    147 S. W. 2d 362

Opinion delivered February 10, 1941.

---

*Wiley Bean, Bob Bailey, Jr.,* and *Bob Bailey, Sr.,* for appellant.

*House, Moses & Holmes, Eugene R. Warren, N. R. Rusk* and *J. M. Smallwood,* for appellee.

McHANEY, J. Appellant, a resident of Little Rock, brought this action at Russellville, in the Pope circuit court, to recover damages for personal injuries which he alleged he sustained on December 30, 1938, while an employe of appellee, as a cable splicer helper. Appellee is engaged in the distribution of electricity in the City of Little Rock, Russellville and other places. In Little Rock, in the downtown district, it owns, operates and maintains an underground distribution system, consisting of duct lines, cables, switches, conduits, manholes, transformer vaults, substations, and other equipment in and through which manholes and vaults the cables, transformers and switches are installed for the purpose of supplying electricity to its customers in such downtown area. One of appellee's lines is located in the alley west of and parallel to Main street, and runs from Markham south to west Eighth street. At approximately each 150 feet along said line, there is a concrete room known as a manhole which is entered through a surface opening and is kept closed, except when occupied, by a manhole cover. There are also located at certain places along and near this line concrete rooms known as transformer vaults, which are much larger than the manholes,

the one here involved being 10x18 feet, 8 feet deep. There is one such manhole on the south side of west Fourth street, where the alley intersects said street, and approximately 20 feet west of it there is located a transformer vault housing three transformers for standby service. The only connection between this manhole and vault is a duct line encased in concrete which contains eight round fiber tubes, each about 3½ inches in diameter, through which electric cables pass, and cables were in six of the eight tubes, leaving two vacant. It was in this manhole that an explosion and fire occurred on December 30, 1938, at about 11 o'clock a. m., at a time when appellant and three other employes were in the transformer vault some 20 feet away, and it is alleged that when the explosion occurred in the manhole the lights in the vault went out and it was filled with smoke, gas fumes and gases which he was compelled to inhale for a few minutes, until he got out by means of a ladder to an exit to which he was directed by others on the outside, he being the next to the last of those with him to get out. He alleged the cause of the explosion was unknown to him, but that "the explosion would not have happened except for the negligence of the defendant (appellee), its servants, agents and employes, or was caused by something in connection with the equipment or operation of said electrical system in or about said vault, manhole or conduits, wires, substation and switches or other equipment over which defendant had entire control." He further alleged that he immediately fell to the floor, in accordance with appellee's safety instructions, to avoid as far as possible the breathing of poisonous gases, smoke and fumes, and that it was negligent in not equipping said vault with circulating fans, which, together with his act in falling to the floor, would have prevented the injuries he alleges he sustained. He further alleged that "he does not know the exact cause of said explosion and therefore is unable to allege any particular cause thereof, but that all the facts of this explosion are well known to the defendant, its servants, agents and employes." Quotations from appellant's abstract. An amendment to this complaint was filed

charging ten specific acts of negligence to appellee, as follows: 1. failure to furnish a safe place to work; 2. failure to provide approved testing equipment to discover natural gas in the vault; 3. in carrying too heavy a load of electricity through its equipment; 4. in using old and dilapidated wires, switches and conduits; 5. in not keeping its wires properly insulated; 6. in permitting its wires to come in too close contact; 7. in overloading the wires causing them to get too hot; 8. in not keeping its wires, etc., so as not to cause a short circuit; 9. in not clearing the gas from the vault and manhole prior to sending him in to work; and 10. in telling him and others to go into said vault.

The answer was a general denial and a plea of assumed risk. Trial resulted in an instructed verdict for appellee, on which judgment was entered, and from which comes this appeal.

Appellant's principal reliance for a reversal of the judgment against him is based upon the doctrine of *res ipsa loquitur,* which means "the thing speaks for itself." For the purpose of this opinion only, we assume that the doctrine is applicable to the facts in this case. In *Chiles* v. *Ft. Smith Commission Co.,* 139 Ark. 489, 216 S. W. 11, which was a case in which a demurrer to the complaint was sustained and which is our leading case on the subject, the rule as declared in Shearman and Redfield on Negligence (§ 59) is quoted with approval as follows: "When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care." Another quotation in the same case from 20 R. C. L., § 156: "More precisely the doctrine *res ipsa loquitur* asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been

exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care. . . . The presumption of negligence herein considered is, of course, a rebuttable presumption. It imports merely that the plaintiff has made out a *prima facie* case which entitles him to a favorable finding unless the defendant introduces evidence to meet and offset its effect. And, of course, where all the facts attending the injury are disclosed by the evidence, and nothing is left to inference, no presumption can be indulged—the doctrine *res ipsa loquitur* has no application.''

It will be noticed that the rule is conditioned in the one case on ''the absence of explanation by the defendant,'' and in the other on ''the absence of any explanation by the defendant tending to show that the injury was not due to his want of care.'' And the last half of the quotation from R. C. L. is emphatic that it merely creates a rebuttable presumption, and imparts only the establishment of a *prima facie* case, which is overcome and disappears when proof of due care is offered by the defendant. In this respect it is comparable to and not distinguishable from the rule of law on our statutory presumption of negligence where a person or property is killed or injured by the operation of a train. In such a case a presumption of negligence arises from the mere happening of the incident, but it is a mere rebuttable presumption which is overcome, disappears and has no further place in the case when the railroad company offers proof of its due care. *St. L.-S. F. Ry Co.* v. *Cole,* 181 Ark. 780, 27 S. W. 2d 992; *C., R. I. & P. Ry. Co.* v. *Fowler,* 186 Ark. 682, 55 S. W. 2d 75; *Western & A. R. R. Co.* v. *Henderson,* 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884.

Now, the fact is that appellee's testimony overcame this presumption of negligence arising from the doctrine or rule of *res ipsa loquitur.* The undisputed proof on the part of appellee is that appellant and other employes were engaged at the time in making its regular

weekly inspection of its underground facilities; that there was no gas in the manhole or in the vault; that several of its employes had been in the manhole that morning, making an inspection, with the cover off and the manhole open; that before entering the manhole or the vault an inspection or test was made for gas and none was present; that natural gas is odorized so that it can be detected by the sense of smell; that other employes had left the manhole not exceeding ten or fifteen minutes before the explosion occurred; and that it was wholly unknown to appellee and its employes what caused the explosion. It was further shown that the wires, cables, conduits, switches and other equipment were in perfect condition, were of standard make and the best and latest equipment. Mr. Wilkes, General Manager of appellee, testified that he had made a "thorough investigation, done everything we possibly could —we know the result of it, but what caused it we don't know." Another explosion had occurred previously but they had been unable to ascertain what caused them. Appellee's own chief electrical engineer, Mr. Pitman, and a special engineer, Mr. Stewart, who, according to Mr. Wilkes, is "one of the best electricians in the United States," were consulted and they could not determine the cause of the explosions, and that they are not discoverable by any known method of inspection. As said by this court in *Western Coal & Mining Co.* v. *Garner*, 87 Ark. 190, 112 S. W. 392, 22 L. R. A., U. S. 1183. "They (the wires) were shown to be in perfect order but a short while before the accident. The appellees do not show that the wires were in such condition before the accident that the exercise of ordinary care in their inspection would have discovered any defect. *Mammoth Vein Coal Co.* v. *Looper*, 87 Ark. 217, 112 S. W. 390. Negligence cannot be presumed, under the facts shown here from the mere happening of the accident." Citing cases.

Here, the undisputed proof on the part of appellee shows that there was no lack of care on its part, nor is there any proof in the whole case that the accident could not have happened but for appellee's negligence. So, conceding that the *res ipsa loquitur* doctrine is appli-

cable and that proof of the happening of the accident raised a presumption of negligence, still the proof on the part of appellee overcame the presumption, blotted it out, as it were, and it thereafter served no purpose in the case. There was therefore no question of fact to be submitted to the jury, in so far as the *res ipsa loquitur* doctrine is concerned, and the court correctly so held.

As to the specific acts of negligence alleged in the amendment to the complaint, we think it unnecessary to discuss them in detail. The case seems to have been tried on the *res ipsa loquitur* doctrine, because of the explosion, but assuming that appellant relied on one or more of the specific acts alleged, there is no evidence in this record to substantiate any such allegation. He argues that it was the duty of appellee to exercise ordinary care to furnish him a reasonably safe place in which to work, and so it is. Even so, it was not an insurer of his safety, but was only required to exercise ordinary care. It is suggested that the failure to furnish fans in the vault was evidence of negligence. The only purpose fans could have served would be to blow out the gas or other noxious fumes therein, and the undisputed proof is that there was none, either in the vault or the manhole prior to the explosion. What we have already said, relative to the condition the equipment was shown to be in, and that the evidence fails to show any lack of due care on the part of appellee, disposes of appellant's allegations of specific acts of negligence. The burden was on him to prove them, and this he has wholly failed to do. So, the court was correct in directing a verdict for appellee on this account, as well as on the whole case.

No error appearing, the judgment is affirmed.

HUMPHREYS, J., dissents.