GURDON & FORT SMITH RAILWAY COMPANY *v.* CALHOUN.

Opinion delivered March 9, 1908.

1. MASTER AND SERVANT—NEGLIGENCE.—Where an employee of a company engaged in constructing a railroad sued both the construction company and the railroad company for injuries caused by a heavy implement falling from a construction train, it was error to refuse to charge the jury that if the construction company was not in control of and operating the construction train at the time of the injury, and had nothing to do with the loading of the implement on the train, then their verdict should be in favor of the construction company. (Page 80.)

2. NEGLIGENCE—RES IPSA LOQUITUR.—Where a heavy implement fell from a railway train and injured an employee of a construction company engaged in tracklaying, a presumption of negligence arises, either in the manner of loading the train or in the manner in which the train was operated. (Page 81.)

3. APPEAL—HARMLESS ERROR.—One cannot complain of an instruction more favorable to him than he was entitled to under the proof. (Page 82.)

4. DAMAGES—EXCESSIVENESS.—A verdict for $5,000 as damages will not be set aside as excessive where the evidence shows that plaintiff had his nose broken and his upper lip cut so that he lost the use of it, that his wrist was broken, and he was otherwise injured and disabled, and that by reason of his injuries he suffered great bodily and mental pain, and was permanently disfigured and disabled. (Page 82.)

Appeal from Pike Circuit Court; *James S. Steel,* Judge; reversed in part.

STATEMENT BY THE COURT.

The Dalhoff Construction Company, an independent contractor, was building a bridge over the Antoine River, in Pike County, for the Gurdon & Ft. Smith Railway Company. The Construction Company was doing the grading and bridge work, and the Gurdon & Fort Smith Railway Company was doing the track-laying work, such as placing the ties on the dump and laying the steel on the ties. The Railway Company had a construction train on the road for that purpose. Appellee was directed by the foreman of the Construction Company to saw off the ends of "sway brace" on the bridge. The bridge was one hundred and fifty feet long. The construction train was at the end of the bridge about one hundred feet from where appellee was at work, cutting the "sway braces." It was laying

the steel at the time at the request of the Dalhoff Construction Company, in order to keep their carpenters at work. The Construction Company desired the work of laying the steel "rushed" in order that it might get its bridge material through over the track, and hence made the request of the Railway Company to "rush" that work. The Railway Company was laying the steel, working toward appellee. The appellee described the manner in which he was injured as follows: "The train must have been something like 100 feet from me, coming towards me; when I went to work, I walked down the track and stepped down on to the cap, which was only about 24 inches below. I had cut two sway-braces when they closed in on me. I was standing on a plank about 14 inches wide. I saw the train coming, and knew what it was doing. At the time the tie jack fell I was standing still. I had finished the sawing, and didn't have anything to do until the train got out of the way. The train would move the length of a rail or half the length of a rail sometimes. I could have climbed over the train, if I had wanted to take the chances, which I wouldn't do. The rails were 28 or 30 feet long. The train naturally moved very slow. I had seen the work train at work several days before this. I was stooping over at the time I was struck, looking down the train to see if anything loose was hanging down, as sometimes car stakes drop through. These were ordinary flat cars, and I knew how they were worked. The top of the car would have been level with my head if I had been standing straight. The tie jack fell and knocked me off on the ground." The "tie jack," says the witness, "was made something like a carpenter's horse, about seven feet long. They load ties on this, and there is a trigger, and they knock that trigger, and it lowers the ties and lets them down on the tracks."

Appellee sued appellants, alleging that they were jointly engaged in the construction of a line of railroad, etc.; that he was in the employ of the Dalhoff Construction Company, "and while doing work upon the bridge a construction train passed over said bridge, on which train was loaded a tie jack made of heavy pieces of timber, and which weighed about 300 pounds; that said tie-jack was negligently placed upon said car near the edge, and that in passing over the bridge, without fault of the plaintiff, the same fell from said car, striking the plaintiff," and

causing the injuries of which he complains, and which he specifically described in his complaint. "That said injury was caused by the negligence of the defendants in failing to properly load said car, and in negligently and carelessly running the same over the said bridge, negligently permitting said tie-jack to fall from said car, and failing to warn the plaintiff of the danger therefrom."

The Dalhoff Construction Company answered that it was jointly engaged with the Gurdon & Fort Smith Railway Company in the construction of the railroad; admitted that plaintiff was in its employ, and assisting in the building of the bridge over Antoine River; denied that it was responsible for the injury of plaintiff; alleged that the Construction Company had nothing to do with the management or operation of the construction train that injured plaintiff, that it had nothing to do with the placing of the "tie jack" on the train, and alleged that the injury was without the fault or negligence of the Construction Company in any way whatever.

The appellant Railway Company answered, denying all the material allegation of the complaint specifically, and setting up contributory negligence of plaintiff, by way of affirmative defense.

The cause was sent to the jury upon the facts substantially as above stated and upon instructions. The verdict was for $5,000 against the defendants jointly. Judgment was entered accordingly. Motions for new trial were made by each defendant, and overruled.

This appeal was prosecuted by each of the appellants.

Other facts stated in the opinion.

*Tom M. Mehaffy* and *J. E. Williams,* for appellant Railway Company.

1. Appellee was an employee of the construction company, an independent contractor. If he was injured by reason of any act or failure of that company, appellant railway company is not liable. 53 Ark. 503; 77 Ark. 551.

2. There is no presumption of negligence against the railway company in this case. It could owe no greater duty to appellee than it would owe to one of its own employees, and, in-

deed, like the proprietor of premises on which a party has gone by invitation, the extent of its duty would seem to be to exercise due care to guard him against the consequences of hidden or unusual dangers on, the premises. Thompson on Neg. § 680; White's Supplement, *Id.* 979; 74 N. E. 919; 79 Ark. 437. This case does not fall within the rule *res ipsa loquitur.* 73 S. W. 279; 43 S. E. 443; 40 Fed. 566; 111 Fed. 58.

3. This case does not fall within the statutory presumption of injuries caused by the running of trains, and no presumption of negligence arises from the receipt of the injury. 69 Ark. 380.

*H. F. Auten,* for appellant Construction Company.

The court should have granted appellant Construction Company's request for a peremptory instruction in its favor. If any negligence was shown, it was that of the Railway Company, and there is no contention nor proof that this appellant was either interested in or had any control of the operation of the train. The court further erred in refusing the second instruction requested by said appellant. 63 Ark. 183.

*McRae & Tompkins,* for appellee.

1. Appellant Construction Company is liable. The servant is not bound to make examination for defects but may rely upon the judgment and discretion of the master. In this case the foreman was chargeable with the duty of seeing that he was not subjected to unnecessary dangers. 48 Ark. 347; 77 Ark. 377; *Id.* 458; 56 Ark. 206-11; 104 Mo. 114; 55 Am. Rep. 169; 48 L. R. A. 758, note 5. The train being there at the Construction Company's instance, it is liable for failure to use reasonable care to prevent the tie-jack from falling; but if it be held that this duty did not devolve upon it, then it is liable for failure to make timely discovery and to warn appellee of the danger. 67 Ark. 295; 110 Mass. 241; 100 U. S. 213.

2. Appellee was not a trespasser, but rightfully on the bridge, and appellant Railway Company owed him the same duty it owed to its own servants or to the public. Did this appellant use ordinary care? The presumption of negligence arises from the injury, and the fact that the tie-jack fell is conclusive proof of its negligence. The doctrine *res ipsa loquitur*

applies. 63 Ark. 636; 134 N. Y. 418; 77 Ia. 607; 41 Neb. 1; 75 Ark. 479; 57 Ark. 418. And the burden was upon defendant to show that it was not negligent. 57 Ark. 429; 54 Ark. 209; 2 Labatt, Master and Servant, § 834.

Wood, J., (after stating the facts.) First. The Dalhoff Construction Company asked the court to instruct the jury to return a verdict in its favor. It also asked the following:

"The jury is instructed that if it finds that the Dalhoff Construction Company was not in control of and operating the construction train over the bridge at the time of the injury, but that the same was being operated by the railroad company in carrying on its own business, and that the Dalhoff Construction Company had nothing to do with the loading of the tie-jack, which caused the injury, on said train, then your verdict should be in favor of the defendant, the Dalhoff Construction Company."

The court, upon the undisputed facts, should have granted these requests, and it was prejudicial error to refuse them. There was no evidence to warrant the finding of negligence on the part of the Construction Company. It had nothing whatever to do with the work of placing ties and laying steel, in which work the construction train was engaged at the time appellee received his injuries. The work of placing ties and laying steel was exclusively the contract of the railway company. It was operating the train from which the "tie-jack" fell that injured appellee. If there was any negligence that caused the injury to appellee, it was the negligence of the appellant railway company; for it alone was responsible for the loading of the tie-jack, and the management and operation of the train from which the tie-jack fell. The mere request of the Construction Company to the Railway Company for the latter to do the work of laying the steel earlier than it otherwise would have done, in order to accommodate the Construction Company, did not render that company liable for any negligence on the part of the Railway Company resulting in the injury to appellee. There were no contractual relations between the Construction Company and the Railway Company, and the latter company in yielding to the request of the former was doing it as a simple act of kindness. The making the request by the one and the

granting it by the other did not create the relation of principal and agent or master and servant, and did not make them joint tort feasors. Therefore, in our opinion, upon the undisputed facts, if there was actionable negligence, the Railway Company alone was responsible for it. The rule requiring the master to exercise ordinary care to provide a safe place and appliances for his servant and to warn him of latent dangers, etc., has no application to the facts of this case, for the reason that the construction company had provided appellee a safe place. There is no evidence to show that it was not safe. There were no latent dangers of which it was incumbent on the Construction Company to warn appellee. Appellee was perfectly familiar with the work, and such danger as there was from the location of the tie-jack on the car was as obvious to him as to the Construction Company. It is unnecessary, therefore, to consider other rulings of the court bearing upon the liability of the appellant Construction Company.

The proof was not sufficient to sustain the judgment as to the Construction Company, and it is reversed as to it, and the cause is dismissed.

Second. The appellant Railway Company contends that the injury complained of was not caused by the running of its train, in the sense of· the Constitution and statute making railroads liable for the damage done by the running of trains. But it is unnecessary to pass on this question, for the uncontroverted facts raised the presumption of negligence.

Appellee was in a place where he had a right to be. It was a safe place until made dangerous by the presence and operation of the train over which appellant railway company had the exclusive management and control. The falling of a "tie-jack," weighing three hundred pounds, from the car could not well have happened in the usual course unless there had been some negligence in loading it on the car in the first place, or in the manner in which the train was operated and the car was moved, in the second place. Such an implement, if handled with ordinary care, could not fall from the car in the usual and ordinary method of its use as shown by the proof. The fact, then, that it did fall raises the presumption of negligence, and the doctrine of *res ipsa loquitur* applies. See *Price* v.

*St. Louis, I. M. & S. Ry. Co.,* 75 Ark. 479-491; *Choctaw, O. & G. Rd. Co.* v. *Dougherty,* 77 Ark. 1; *Arkansas Tel. Co.* v. *Ratteree,* 57 Ark. 429; *Railway Company* v. *Hopkins,* 54 Ark. 209; 4 Elliott, Railroads, § 1644; *Bice* v. *Wheeling Electrical Co.,* 59 S. E. 626.

The court instructed the jury that the fact that the jack fell off at the time, as testified to, raises no presumption that the persons in charge of the train were negligent. The appellant contends that under this instruction the verdict was erroneous. The instruction was not the law applicable to the facts proved. But the verdict of the jury was supported by sufficient evidence, had they been correctly instructed. We can not reverse a judgment that is based upon a correct verdict because the court below gave an erroneous instruction more favorable to appellant than it was entitled to. *Southern Cotton Oil Co.* v. *Spotts,* 77 Ark. 458.

The verdict and judgment were right, notwithstanding the erroneous instruction.

The appellee alleged that the falling of the tie-jack broke his nose, split his upper lip and broke or mashed the cord of his upper lip so that he lost the use of his upper lip, broke his wrist, and otherwise injured and disabled him; that by reason of said injuries he suffered great bodily and mental pain, and has been permanently disfigured and disabled. There was evidence to sustain these allegations. The judgment is affirmed.