CHILES *v.* FORT SMITH COMMISSION COMPANY.

Opinion delivered July 14, 1919.

1. NEGLIGENCE—RES IPSA LOQUITUR—ALLEGATIONS OF THE COMPLAINT—UNEXPLAINED EXPLOSION.—Plaintiffs, the widow and children of one C., deceased, brought suit against defendant to compensate the loss sustained by them in the death of their intestate. The complaint alleged that a four-story building, in which C. was employed, was blown up and C. was killed; that the building contained various gas and ammonia fixtures which were in the exclusive control of the defendants; that C. was rightfully in the building at the time of the explosion but had no duty to perform in connection with the instrumentalities which occasioned the injury; and that the cause of the explosion was unknown to the plaintiffs. *Held*, a demurrer to this complaint was improperly sustained and that the concurrence of the conditions alleged made applicable the doctrine of *res ipsa loquitur*.

2. NEGLIGENCE—DOCTRINE OF RES IPSA LOQUITUR—SCOPE OF THE DOCTRINE.—The doctrine of *res ipsa loquitur* is not limited in its application to cases in which public carriers are involved, nor to

cases in which a contractual relation exists between the defendant and the party injured; but the doctrine has application in any case, the circumstances of which are so unusual and of such a nature that the injury could not well have happened without negligence on the part of the defendant, or when the injury is caused by something connected with machinery or equipment over which the defendant has entire control.

3. NEGLIGENCE—RES IPSA LOQUITUR—PROOF—QUESTION FOR JURY.— *Held,* the facts stated in the complaint as set out in paragraph No. 1, *supra,* state a cause of action, and if at the trial testimony is offered which supports the allegations, a case will be made entitling plaintiff to go to the jury, to have decided whether such testimony considered together with any other testimony which may be offered, discharges the burden of proof resting upon the plaintiff.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; reversed.

*T. J. Wear,* for appellants.

1. The complaint alleges a good cause of action by alleging negligence in general terms and that with the known facts as set out in the complaint, they could have introduced expert evidence sufficient for a recovery without alleging and proving the specific acts of negligence. 29 Cyc. 628; 19 *Id.* 15, § 4; 107 Cal. 549; 40 Pac. 1020; 48 Am. St. Rep. 146; 29 L. R. A. 718.

2. *Res ipsa loquitur* rule does not apply here. 29 Cyc. 591-2. The relation of master and servant does not exist here. The deceased owed appellee no contractual duty. Defendants owed deceased a duty not to injure him, as he was in their building under a special contractual relation as set forth in the complaint. 29 Cyc. 594; see also 11 Fed. 438; 107 Cal. 549; 20 L. R. A. 718; 40 Pac. 1020; 86 Ark. 76; 57 *Id.* 429.

*Hill, Fitzhugh & Brizzolara* and *Daily & Woods,* for appellees.

1. No negligence is charged in the complaint and no attempt to state any facts charging negligence to defendants. Only certain conclusions of law are stated in general terms. It was insufficient. 35 Ark. 104; 60 *Id.*

606; 43 *Id.* 296; 95 *Id.* 6; 17 *Id.* 445; 97 *Id.* 97; 34 *Id.* 111; 94 *Id.* 524; 110 *Id.* 416; 83 *Id.* 78; 44 N. Y. S. 284; 15 App. Div. 74; 102 Ill. App. 461; 99 N. Y. S. 890; 114 App. Div. 290; 170 Pa. St. 25; 32 Atl. 607; 71 Iowa 658; 180 Pa. 409; 44 L. R. A. 92. Thornton on Oil & Gas (3 ed.), § 743; 174 S. W. 730; 59 So. 959; 64 S. E. 721; 65 W. Va. 552.

2. *Res ipsa loquitur* does not apply. 166 Fed. 651; 42 Atl. 708; 113 N. Y. Sup. 343; Thornton on Oil & Gas (2 ed.), § 610-11; 61 Pac. 50; 158 Ky. 848; 51 W. Va. 96; 46 Oh. St. 386; 71 W. Va. 335; 67 S. W. 610; 122 N. Y. 118; 128 N. Y. 103; note to L. R. A. 1917 E, 189; 127 Ark. 98. See also 8 Gray 123; 129 Mass. 318; 12 Phila. 173; 22 Wash. L. Rep. 656; 65 W. Va. 552; 150 Ill. App. 126; 87 Ark. 190; 96 *Id.* 500; 44 *Id.* 529; 77 *Id.* 74; 79 *Id.* 617.

SMITH, J. Appellants are the widow and children of J. C. Chiles, and brought this suit as such to compensate the loss sustained by them in the death of their intestate. For their cause of action the following facts are alleged: That the defendants were conducting a mercantile business at No. 119 Rogers avenue in the city of Fort Smith in a four-story brick building, of which they had joint control and management. Other allegations of the complaint are as follows:

"That said defendants were in joint control of all of the pipes, pumps, tanks, machinery and all other appliances that were used by defendants in their business in furnishing the gas and ammonia that was used for the various purposes of the defendants in said building.

"That there was large amounts of ammonia used by said defendants in said building and by reason thereof they had large amounts or quantities of ammonia stored in pipes, tanks and vats in the basement of said building and they also had large amounts and quantities of natural gas circulating through and into said building by means of large pipes.

"That on or about 1:50 P. M. on the 22d day of October, 1918, through the negligence of the defendants,

their agents, servants and employees, in some manner unknown and unexplained to plaintiffs, the gas and ammonia that was being used by said defendants in said building was exploded and was set on fire and said building was wrecked and burned up and demolished and the said J. C. Chiles, deceased, who was in said building at the time of said explosion and when said gas and ammonia was set on fire, was killed by reason of said explosion and fire by the gas, ammonia, and by fire which suddenly filled said building, before he was able to make his escape from the fourth floor of said building where he was at work as an employee of the W. J. Echols Company, wholesale grocers.

"That at the time of the said explosion and fire, the said J. C. Chiles, deceased, was in the employ of the W. J. Echols Company, wholesale grocers, and when the explosion and fire occurred, he was in a room or on the fourth floor of the said building of the defendants aforesaid, which room or floor the said W. J. Echols Company, wholesale grocers, had rented or reserved from the defendants and into which the said W. J. Echols Company, wholesale grocers, had the right under its contract with the defendants to enter with its employees to transact its business on said fourth floor of said building and it also had the right of ingress and egress to said building and the said defendants by reason of their said contract with the said W. J. Echols Company, wholesale grocers, owed it and its employees a contractual duty and ordinary care not to injure or kill them by reason of an explosion of the said gas and ammonia or the burning of the gas and ammonia in said building which was used in their building, by their negligence or by the negligence of either of them.

"That at the time that said J. C. Chiles, deceased, was killed by said explosion and by the burning of said gas and ammonia in said building, he was at work for the said W. J. Echols Company, wholesale grocers, and was in the due scope or course of his employment and was using due and proper care and caution for his own safety

and protection at the time he was killed, and that it was through no fault of his that said explosion occurred or that said gas and ammonia was set on fire or that he was killed.

"That the defendants owed the said J. C. Chiles, deceased, a contractual duty as aforesaid not to injure or kill him by their negligence in the manner as aforesaid.

"That plaintiffs do not know the exact act or acts of negligence of the defendants that caused said explosion and caused said gas and ammonia to be set on fire and they were unobtainable by these plaintiffs as said building, pipes, pumps, tanks, vats, machinery and appliances in and being used in said building were in the sole and exclusive control and management of the defendants, their agents, servants, and employees as was also the gas and ammonia that was in said building and that was being used by said defendants in their business in said building at the time.

"That it was through the negligence of the defendants that said explosion occurred and said gas and ammonia was set on fire and that said building was wrecked and burned up and demolished and that said J. C. Chiles, deceased, was killed.

"That said explosion would not have occurred and said gas and ammonia been set on fire and said building would not have been wrecked and burned up and demolished and the said J. C. Chiles, deceased, been killed if the defendants had used due and proper care in the management and control of the pipes, pumps, tanks, vats, machinery and appliances that were used by said defendants in their business in furnishing the gas and ammonia that was used for the various purposes of the defendants in said building and if they had used due and proper care in the storing and handling of the said gas and ammonia that was used by said defendants in said building.

"That the act or acts of negligence upon the part of the defendants that caused said explosion and caused said gas and ammonia to be set on fire and said building to be wrecked, burned up and demolished and caused the

said J. C. Chiles, deceased, to be killed, were and are known to the defendants.''

A demurrer was filed on the ground that the complaint did not state facts sufficient to constitute a cause of action against the defendants, or either of them. The demurrer was sustained and the complaint dismissed, and this appeal has been prosecuted to review that action.

Appellants first insist that negligence on the part of the defendants is sufficiently charged to constitute a cause of action; and the second contention is made that, if this be not true, sufficient facts are alleged to make applicable the maxim *res ipsa loquitur*.

(1) We do not agree with the first contention. The allegations in regard to negligence are in effect conclusions of law; and if the maxim *res ipsa loquitur* is not applicable the complaint is demurrable. *Ballard* v. *Kansas City & Memphis Farm Co.*, 131 Ark. 83; *Hollis* v. *Hogan*, 126 Ark. 207; *Phillips* v. *Southwestern Tel. & Tel. Co.*, 72 Ark. 478; *Northern Construction Co.* v. *Johnson*, 132 Ark. 528; *Keller* v. *Vowell*, 17 Ark. 445; *C., R. I. & P. R. Co.* v. *Smith*, 94 Ark. 524; *Wood* v. *Drainage Dist. No. 2*, 110 Ark. 416; *Southern Orchard Planting Co.* v. *Gore*, 83 Ark. 78.

So far from alleging the cause of the explosion or the particular act or acts of negligence which occasioned it, the complaint contains the affirmative recital that the plaintiffs do not know the cause of the injury, consequently there could be no specific allegations concerning it. When analyzed, the complaint is found to contain substantially the following allegations: That a four-story business house was blown up and plaintiff's intestate killed; that the building and all gas and ammonia fixtures and appliances therein were in the exclusive control of the defendants; that the intestate was rightfully in the building at the time of the explosion but had no duty to perform in connection with the instrumentalities which occasioned the injury; and that the cause of the explosion was unknown to plaintiffs. The concurrence of these conditions makes applicable the doctrine of *res ipsa loquitur*.

This doctrine does not dispense with the requirement that the party who alleges negligence must prove the fact; but relates only to the mode of proving it. *Stewart* v. *Vandeventer Carpet Co.,* 138 N. C. 60, 50 S. E. 562.

(2) As applied to railroads the rule is stated in 4th Elliott on Railroads, section 1644, as follows: "The true rule would seem to be that when the injury and circumstances attending it are so unusual, and of such a nature that it could not well have happened without the company being negligent, or when it is caused by something connected with the equipment or operation of the road over which the company has entire control, a presumption of negligence on the part of the company usually arises from proof of such facts, in the absence of anything to the contrary, and the burden is then cast upon the company to show that its negligence did not cause the injury."

We quoted and approved this statement of the law in the case of *Biddle et al., Recvrs.,* v. *Riley,* 118 Ark. 218; *Choctaw, O. & G. Rd. Co.* v. *Doughty,* 77 Ark. 9; *Price* v. *St. L., I. M. & S. R. Co.,* 75 Ark. 491; and *St. L., I. M. & S. R. Co.* v. *Armbrust,* 121 Ark. 351.

In the Riley and Price cases the persons injured were passengers upon trains; and in the Doughty case a fireman on a freight train, while in the Armbrust case the party injured was a traveler at a railroad crossing who was hit by a piece of coal falling from the train. But there is nothing in the opinion in any one of the cases which makes the doctrine applicable only to railroads. There are cases which apparently treat the doctrine as applicable only against carriers, and it is no doubt true that the doctrine has been more frequently applied in cases against carriers of passengers than in any other class of cases. But there appears to be no valid reason for thus limiting the doctrine. A leading case on the subject and one well considered is that of *Judson* v. *Giant Powder Co.,* 29 L. R. A. 718. That was a case where property was destroyed by an explosion of nitro-glycerine in process of manufacture into dynamite, and Mr.

Justice Garoutte, speaking for the Supreme Court of California, said: "All courts agree that, where contractual relations exist between the parties, as in cases of common carriers, proof of the accident carries with it the presumption of negligence, and makes a *prima facie* case. This proposition is elementary and uncontradicted. Therefore the citation of authority is unnecessary. Yet we know of no sound reason, and have found none stated in the books, why this principle of presumptions should be applicable to cases involving contractual relations, and inapplicable to cases where no contractual relations exist. It is intimated in some Indiana case that the presumption arises upon proof of the accident by reason of the carrier's contract to safely deliver the passenger at his destination, but there is no such contract. The carrier is not an insurer of his passenger. If he were, this presumption of negligence arising from the accident, aside from the act of God, would be conclusive and irrebutable; but such is not the fact, for it is only *prima facie* and always disputable. As was well said by the court in *Rose* v. *Stephens & C. Transfer Co.*, 11 Fed. Rep. 438: "Undoubtedly the presumption has been more frequently applied in cases against carriers of passengers than in any other class, but there is no foundation in authority or in reason for any such limitation of the rule of evidence. The presumption originates from the nature of the act, not from the nature of the relations between the parties.' The carrier's contract with his passenger is simply to exercise a certain degree of care in his transportation. It is a duty which the law enjoins upon him; but the law also enjoins the duty upon this appellant and all others, in the conduct of their business, to exercise a certain degree of care towards this respondent and all mankind. The duty which the law enjoins in the two cases only differs in the degree of care to be exercised. The principle of law involved is wholly the same; and, as has been said, the reason of the rule is not found in the relations existing between the party injuring and the party injured. The presumption arises

from the inherent nature and character of the act causing the injury. Presumptions arise from the doctrine of probabilities. The future is measured and weighed by the past, and presumptions are created from the experience of the past. What has happened in the past, under the same conditions will probably happen in the future, and ordinary and probable results will be presumed to take place until the contrary is shown. Based upon the foregoing principles, a rule of law has been formulated, bearing upon a certain class of cases, where damages either to person or property form the foundation of the action. This rule is well declared in Shearman and Redfield on Negligence (section 59) : 'When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care.' Tested by this rule, no question of contractual relation could ever form an element in the case. With the same reason it might as well be said that cases of contract were excluded from the effect of the rule, as that cases of pure tort were excluded; but, upon the contrary, it is plainly evident that both classes of actions come equally within its provisions. In speaking on this question, it is said in Cooley on Torts (p. 799) : 'The rule applied to carriers of passengers is not a special rule, to govern only their conduct, but is a general rule which may be applied wherever the circumstances impose upon one party alone the obligation of special care.' The author then cites the case of the householder engaged in repairing his roof. A piece of slate falls therefrom, and injures a traveler upon the street. He then says : 'True, the act of God, or some excusable accident may have caused the slate to fall, but the explanation should come from the party charged with the special duty of protection.' "

In support of the statement of the law thus quoted a large number of cases are there cited and reviewed. There is also an extended case note.

In the article on Negligence in 20 R. C. L., section 156, it is said: "More precisely the doctrine *res ipsa loquitur* asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due to his want of care. * * * The presumption of negligence herein considered is, of course, a rebuttable presumption. It imports merely that the plaintiff has made out a *prima facie* case which entitles him to a favorable finding unless the defendant introduces evidence to meet and offset its effect. And, of course, where all the facts attending the injury are disclosed by the evidence, and nothing is left to inference, no presumption can be indulged—the doctrine *res ipsa loquitur* has no application."

And in section 157 of the same article it is said: "* * * It has been held in some cases that the maxim applies only where the relation of carrier and passenger exists, or where there is a contractual relation between the parties to the transaction producing the injury; but the prevailing view is that a presumption of negligence may be indulged in many other cases, and independently of any contractual relation between the person injured and him who is charged with responsibility for the injury. * * * ."

At section 158 of the same article it is said that this doctrine has found frequent application in cases of injuries from falling objects and substances, and that the rule has been applied in many instances to injuries produced by the fall of awnings, signs, walls, buildings, parts of buildings, building materials, tools, electric wires, and many other objects. Annotated cases are cited in the notes to the text, which collect a very large number of cases. Among the annotated cases there cited are our own cases of *St. L., I. M. & S. R. Co.* v. *Hopkins,* 54 Ark.

209, annotated in 12 L. R. A. 189, and the case of *Hall* v. *Gage,* 116 Ark. 50, annotated in L. R. A. 1915 C. 704.

The litigation in the case of *Hall* v. *Gage, supra,* arose from the falling of a wall which had been left standing after a fire, and in holding that the trial court had erred in refusing to charge the jury that the falling wall was *prima facie* evidence of negligence which imposed upon the owner the burden of showing that the acdent happened without his negligence, we said: ''In the case of *Earl* v. *Reid,* 18 Am. & Eng. Ann. Cases, p. 1, 21 Ontario Law Reports, 545, Teetzel, J., said: 'I think it is the plain duty of every owner of land to keep the buildings or structures thereon in such a condition that they shall not, by falling or otherwise, cause injury to persons lawfully on adjoining lands. In other words, every owner of a building is under a legal obligation to take reasonable care that his building shall not fall in the street or upon his neighbor's land and injure persons lawfully there.

'' 'While the owner cannot be charged for injuries caused by inevitable accident, the result of *vis major* or of the wilful act or negligence of some one for whom he is not responsible, he is liable for injuries caused by the failure on his part to exercise reasonable care.'

''The fact that the wall fell is *prima facie* evidence of negligence in conformity with the maxim, *res ipsa loquitur.* Thompson's Commentaries on the Law of Negligence, volume 1, par. 1213. See, also, paragraph 1060 of the same volume. To the same effect see *Earl* v. *Reid, supra.*''

In the case of *Gurdon & Ft. Smith Ry. Co.* v. *Calhoun,* 86 Ark. 76, an employee working on the railroad track was injured by the falling of a tie-jack weighing three hundred pounds from a work car, and it was there contended by the railroad company that the injury complained of was not caused by the running of a train in the sense of the Constitution and statute making railroads liable for damage done by the running of trains; but the court expressly pretermitted the decision of that

question for the reason there stated that the uncontradicted facts raised the presumption of negligence and in so holding the court said: "Appellee was in a place where he had a right to be. It was a safe place until made dangerous by the presence and operation of the train over which appellant railway company had the exclusive management and control. The falling of a 'tiejack,' weighing three hundred pounds, from the car could not well have happened in the usual course unless there had been some negligence in loading it on the car in the first place, or in the manner in which the train was operated and the car was moved, in the second place. Such an implement, if handled with ordinary care, could not fall from the car in the usual and ordinary method of its use as shown by the proof. The fact, then, that it did fall raises the presumption of negligence."

In the case of *Southwestern Telegraph & Telephone Co.* v. *Bruce,* 89 Ark. 581, the telephone company strung a wire across a vacant lot, which broke and left the end on the foundation of a house where the plaintiff was working. Plaintiff picked up the wire to throw it aside, and was shocked, and burned. The court applied the doctrine of *res ipsa loquitur* in fact but not *eo nomine* and in doing so said: "And where the defendant owes a duty to plaintiff to use care, and an accident happens causing injury, and the accident is caused by the thing or instrumentality that is under the control or management of the defendant, and the accident is such that in the ordinary course of things it would not occur if those who have control and management use proper care, then, in the absence of evidence to the contrary, this would be evidence that the accident occurred from the lack of that proper care. In such case the happening of the accident from which the injury results is *prima facie* evidence of negligence, and shifts to the defendant the burden of proving that it was not caused through any lack of care on its part."

Another case which applied the doctrine in fact but not *eo nomine* is that of *Jacks* v. *Reeves,* 78 Ark. 426.

The complaint there alleged that as plaintiff was driving along the road the top of her carriage was caught by defendant's telephone wire and torn off, causing the horse to become frightened and run away and injure the plaintiff. The court charged the jury "That the plaintiff, in order to entitle her to recover damages under this action, is required to prove that the accident occurred through the negligence of W. D. Reeves." Discussing that instruction the court said it was abstractly correct; that no liability rested upon the defendant except through negligence, but that the instruction was misleading under the facts of that case in not being qualified or coupled with another one explaining that the evidence of the accident and injury following therefrom, when the occurrence was (not) out of the usual course, was *prima facie* evidence of neglect and shifted the burden onto the defendant to prove that it was not caused by any want of care on his part.

See, also, *Arkansas Telephone Co.* v. *Ratterree,* 57 Ark. 429; *St. L., I. M. & S. R. Co.* v. *Steele,* 129 Ark. 532; Thompson on Negligence, vol. 1, sec. 1213.

In the case of *Barnowski* v. *Hilson,* 15 L. R. A. 33, the facts were that the roof of a house slipped and tipped to one side and fell while being raised by jackscrews. There was no showing that the house had been sufficiently braced nor other explanatory proof offered, and the Supreme Court of Michigan held there was a presumption of negligence which entitled the plaintiff to go to the jury. Appended to this case is an extended note in which a large number of cases are collected.

(3). We conclude, therefore, that a cause of action was stated in the complaint, and if testimony is offered which supports these allegations a case will be made entitling plaintiffs to go to the jury to have decided whether such testimony, considered together with any other testimony which may be offered, discharges the burden of proof resting upon the plaintiff.

The judgment of the court below sustaining the demurrer is, therefore, reversed and the cause will be remanded with directions to overrule the same.