FIBBER MEGEE, D/B/A FIBBER'S
PAINT AND BODY SHOP *v.* R. G. REED

5-5976                                          482 S.W. 2d 832

Opinion delivered July 10, 1972

*Wright, Lindsey & Jennings,* for appellant.

*Owens & Fikes,* for appellee.

CARLETON HARRIS, Chief Justice. Just prior to March 19, 1971, appellee, R. G. Reed, took his Pontiac automobile to the repair shop of appellant, Fibber Megee, dba Fibber's Paint and Body Shop, requesting repairs on the car, and leaving it with Megee for that purpose. During the night of March 19, at approximately 2:00 a.m., Megee's Shop, which was a brick building with concrete floors, burned, destroying Reed's automobile. Thereafter, appellee instituted suit against Megee alleging that the fire, and resulting damage to the car, were proximately caused by the negligence of appellant. The Cleveland County Circuit Court, sitting as a jury, held with Reed and awarded damages in the amount of $2,200.00, finding for appellee on two grounds, *viz,* first, on the grounds of *res ipsa loquitur,* and second, evidence that the pilot light in the shop was left on, which the court felt caused the fire. From the judgment so entered, appellant brings this appeal. For reversal, it is simply asserted that there was no (or insufficient) evidence of negligence to support the verdict and judgment for Reed.

The proof reflects that Reed took the car to Megee, leaving it for repairs. William Ray Jacks, Assistant Fire Chief in Pine Bluff, testified that he conducted an investigation at the body shop for the purpose of determining the cause of the fire, but was unable to do so. He stated that the building was divided, and that the center portion was a paint shop; that the fire started in this area of the building. While he could not say whether Megee had left rags in the wrong place, or near paint containers or volatile liquids, he was throughly convinced

that arson was not involved. Megee testified that, as usual, "I just checked the doors and fires[1] to see that everything was locked up and all the lights were out." He said that he kept flammable fluids, rags, and paint in the building; also welding equipment. He did admit that there was a pilot light on top of the oven in the paint department.

The necessary conditions for the invoking of *res ipsa loquitur* are (1) that it is the kind of accident which ordinarily does not occur in absence of someone's negligence (2) that it was caused by agency or instrumentality in the exclusive control of the defendant; (3) that the accident was not due to any voluntary action on the part of the plaintiff. See *Chiles* v. *Fort Smith Commission Company*, 139 Ark. 489, 216 S.W. 11; *Moon Distributors* v. *White*, 245 Ark. 627, 434 S.W. 2d 56. The case before us is almost a perfect example of one in which the doctrine of *res ipsa loquitur* is applicable. In 8 ALR 3d *Res Ipsa Loquitur*—Fires, § 26, p. 1024, there is a discussion of the doctrine as it applies to garages, filling stations, or repair shops, including on p. 1025 a concise resume of a California case bearing much similarity to the case at hand. We quote as follows:

"In *Horner* v. *Barber* (1964) 229 Cal App 2d 829, 40 Cal Rptr 570, 8 ALR 3d 966, the plaintiff and the defendants occupied separate parts of the same building, the defendants conducting a garage, automobile repair, and automobile parts business in their portion. A fire which originated in the portion occupied by the defendants caused a fire loss to the plaintiff. In the garage portion the defendants had stored several vehicles, some with gasoline in the tanks. This garage was separated from the defendant's office by a partition, the windows in which were closed the night of the fire, and a door which had a small open space underneath. The fire chief testified that it was probable that a slight draft created by either the pilot light of the heater in the office or its burner, or both, drew gasoline vapors from under the stored automobiles along the floor of the garage under the door in the partition to the heater in the office, causing a flash-

---

[1] Subsequently, he stated that he was not burning a fire in March.

ing 'explosion'. It was found that the evidence preponderated against the probability that the origin of the fire was incendiary, and that the stored vehicles, the proximity of the office to the vehicles, the installation of the heater, and the absence of safety devices properly could lead the trial judge to conclude that these were instrumentalities in the exclusive control of the defendants, as were the premises themselves, that the accident was not due to any voluntary action on the part of the plaintiff, and that the fire was one which ordinarily does not occur in the absence of someone's negligence, absent some evidence that it was indendiary in nature. *Res Ipsa Loquitur*, it was held, may apply where the cause of the injury is a mystery, if there is a reasonable and logical inference that the defendant was negligent and that such negligence caused the injury. Judgment for plaintiff was affirmed.

In the case now before us, there is no evidence of arson, nor was there any evidence of an electrical storm, but the proof did reflect that the area where the fire occurred contained flammable fluids, rags, paint, and there were cars stored in the building which contained gasoline; in other words, we have an area containing substances that are highly flammable and combustible. Admittedly, the pilot light was left on. As in *Horner*, "these were instrumentalities in the exclusive control of the defendants, as were the premises themselves"; "the accident was not due to any voluntary action on the part of the plaintiff"; and, "the fire was one which ordinarily does not occur in the absence of someone's negligence, absent some evidence that it was incendiary in nature."

We conclude that there was substantial evidence that appellant was negligent and that the trial court was justified in finding that this was the proximate cause of the fire.

Affirmed.

BYRD and FOGLEMAN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I respectfully dissent. I do not find sufficient evidence to support a judgment for appellee whether it is based on res ipsa loquitur or negligence. As I see it, there is a glaring defect in the evidentiary basis for either theory, i.e., the lack of evidence as to the cause of the fire, or the instrumentality which caused it.

We do not know how long appellee's automobile was in the shop, or what condition it was in when taken there. We do not know how many automobiles were in the shop or what equipment was kept in the paint shop. The fire started sometime during the night between 5:00 p.m., March 19, and 2:25 a.m., March 20, 1971. The shop was in a brick building with concrete floors. The only testimony about the cause of the fire was that of the shop owner, who had no idea what caused it, and that of the fire chief, who did not either, even though he found nothing to indicate that Megee had started the fire, and no evidence of negligence. There was a skylight in the building which opens when the wind blows. We do not know what might have come into the building through the skylight.

We recently reviewed the conditions under which res ipsa loquitur comes into play. See *Dollins* v. *Hartford Accident & Indemnity Co.*, 252 Ark. 13, 477 S.W. 2d 179. It must be shown that the injury was caused by an instrumentality under the control of the defendant and that the accident causing the injury was one that, in the ordinary course of things, would not occur if those having control and management of the instrumentality had used proper care. In *Dollins* we said:

> Dean Prosser teaches that before res ipsa loquitur can be applied, there must first be an inference that someone must have been negligent and then the burden of proof is upon the plaintiff to show that the negligence was that of the defendant and to trace the injury to a cause or specific instrumentality for which the defendant was responsible or show that he was responsible for all reasonably probable causes. He also says that there must be an absence of any action on the

part of the injured party contributing to the accident, and that the doctrine will not apply until the plaintiff has satisfactorily accounted for the conduct of the injured party. Prosser, Law of Torts, Fourth Edition (1971), pp. 214-225.

The authorities cited in the majority opinion also recognize that before the res ipsa doctrine comes into play, it must first be shown that the occurrence causing the injury was caused by a thing or instrumentality under the control or management of the defendant.

Here there is no evidence as to what instrumentality caused the fire. To say that it was caused by a pilot light on top of an oven in the paint department is sheer speculation. The investigation by the assistant fire chief and former city fire marshal gave no indication that this was considered as the instrumentality causing the fire. If we are to speculate about the cause of the fire, we might guess that some latent defect in the electrical wiring in the building caused the fire to start. It is common knowledge that this is frequently the case. For that matter, either appellee's vehicle or another subsequently brought to the paint shop may well have brought smouldering fire, defective electrical wiring or other defects into the shop, which first produced a smouldering fire and then caused a vehicle to burst into flame after appellant and all his employees had left the premises. See, e.g., *Ford Motor Co.* v. *Reid,* 250 Ark. 176, 465 S.W. 2d 80. Who can say that some customer or visitor to the paint shop did not throw a burning or smouldering cigarette butt in or near a wastebasket or on the upholstery of an automobile seat, or leave one on a desk or table at a time and in a manner that it went undetected without there having been any negligence on the part of Megee or any of his employees? Or to be extreme, perhaps a rodent could have ignited matches in a box. Any of these causes is as likely as the burning pilot light.

In this connection Dean Prosser observes that a fire of unknown origin will not in itself justify the conclusion that negligence is the most likely explanation and the doctrine of res ipsa loquitur does not apply. Prosser, Law of Torts (Fourth Ed., 1971) 216, Ch. 6, § 39. See also *Im-*

*plement Dealers Mutual Fire Ins.* v. *Golden,* 257 Wis. 532, 44 N.W. 2d 264 (1950).

A statement of the general rule prevailing in regard to the application of the doctrine to fires appears at pp. 616-618 of Vol. 65A C.J.S., Negligence § 220.25. There it is said:

> As a general rule, the mere occurrence of a fire with resultant injuries does not raise a presumption of negligence either in the kindling or the management of the fire, and the doctrine of res ipsa loquitur is ordinarily held inapplicable at least in other than exceptional instances. The rule as more fully stated is that the doctrine of res ipsa loquitur is inapplicable where the origin of the fire was unknown and it could not be determined that the fire could not or would not have occurred except for negligence, and where the physical facts surrounding the fire did not create a reasonable probability that the fire resulted from negligence. So, the doctrine may not be invoked where the evidence is such as to authorize the jury to believe that the fire could have occurred in the ordinary course of events in the absence of negligence, or could have occurred as the result of negligence of another or through the instrumentality or agency of another.
>
> On the other hand, the doctrine has been held to apply where the circumstances under which the fire originated and spread are such as to show that defendant or his servants were negligent in connection therewith. * * *
>
> In order to prevail on the doctrine of res ipsa loquitur in an action for fire damage, the actual cause of the fire must have been under the control of the party charged with negligence. It is not necessary that there be direct proof of the way the fire occurred for plaintiff to be entitled to invoke the doctrine, and this may be shown by circumstantial evidence, although it may not be left to mere speculation or conjecture.

We refused to apply the doctrine of res ipsa loquitur

in an action against a landlord for death of tenants, allegedly due to defects in wiring of which the landlord had knowledge, where there was no substantial testimony from which it could reasonably be said that the defective wiring was the cause of the fire. *Williams, Admr.* v. *Lauderdale,* 209 Ark. 418, 191 S.W. 2d 455. That case clearly demonstrates the insufficiency of the evidence hee to support a judgment for appellee. The tenants who were burned to death occupied rooms on the second floor of the defendants' brick building in which the landlord operated an appliance store on the first floor. The fire occurred about 4:00 a.m. When the firemen arrived they found the building badly damaged by flames, which were coming from the upstairs windows and beginning to break through the roof. There was proof sufficient to authorize the jury to find that the building was wired in such an unsafe manner that it was likely to cause a fire and that the defendants had been warned of the danger. The fire chief said that the condition of the wiring was such that the probable result would cause a fire and stated his opinion that it was the cause of the fire. He admitted, however, that the fire could have been caused by a match, a lighted cigarette, a pilot light, or a bathroom hot water heater. He also admitted, as did the fire chief in the case before us, that he did not know what did cause the fire. We said that the fire chief's testimony did not disclose any physical condition found in the damaged building that would indicate, with that degree of certainty that excludes speculation, that the fire was started by bad wiring or that would eliminate consideration of other causes. We held the evidence of negligence insufficient and had this to say about the doctrine of res ipsa loquitur:

> This holding precludes the application of the doctrine of res ipsa loquitur, ***. Before this rule may be applied it must be shown that the injury complained of was caused by an agency or instrumentality under the exclusive control of the one against whom liability is asserted, and, in such a case, it creates a presumption of negligence against the one in control of the agency or instrumentality causing the injury, where it is shown that, in the ordinary course of things, the injury would not have occurred if proper care had

been exercised. *Arkansas Light & Power Co.* v. *Jackson,* 166 Ark. 633, 267 S.W. 359; 45 C. J. 1193.

As was said by appellant's principal witness, Chief Walsh, the fire in the instant case may have been started by one or more causes, for which appellees could in no event be held responsible. In 38 Am. Jur. 1000 it is said: "Nor doees it (the res ipsa loquitur rule) apply where an unexplained accident may be attributable to one of several causes, for some of which the defendant is not responsible." This rule was applied by us in the case of *Oklahoma Gas & Electric Co.* v. *Frisbie,* 195 Ark. 210, 111 S.W. 2d 550.

In *Oklahoma Gas & Electric Co.* v. *Frisbie,* 195 Ark. 210, 111 S.W. 2d 550, we held that res ipsa loquitur cannot be applied as a rule of law in a case where it is shown that the result might have been brought about by one of two or more speculative theories, neither of which is included or excluded by any affirmative evidence.

When resort is had to other jurisdictions, I find a substantial weight of authority supporting my view. In *Arledge* v. *Scherer Freight Lines,* 269 Wis. 142, 68 N.W. 2d 821 (1955), the parties occupied separate portions of a warehouse. In the quarters occupied by the defendant, there were two rooms in each of which there was an oil stove. An employee of defendant filled one of them, and a fire was discovered under it about an hour later. It spread to the warehouse and had extended about halfway in the building when the firemen arrived. The fire chief made a determination that the fire was caused by a defective oil stove. It was held that negligence was not shown and that the application of res ipsa loquitur was not warranted. The court said that mere control over the premises and the stove afforded insufficient basis for the application of this rule. The Wisconsin court said:

> Careful analysis and consideration of the plaintiff's evidence here does not reveal with any degree of certainty the origin of the fire. It may have started in, upon, under or near the stove with or without negligence on the part of any one. From the circumstances reflected in plaintiff's evidence it cannot be held that the fire could not or would not have oc-

curred except for negligence. Fires frequently occur without negligence. Nor can it be held that the physical facts surrounding the fire in question created a reasonable probability that it resulted from negligence. Under a most favorable construction of the evidence presented on half of the plaintiff, we are not able to determine that the fire in question was of a kind which ordinarily would not or could not have occurred in the absence of negligence.

The fire department official ascribed "Defective Stove" as the cause of the fire. If the fire originated from a defect in the structure of the stove, the inquiry is: Was it a patent or a latent defect? Was it known, or in the exercise of ordinary care could or should it have been discovered by the defendant? The evidence throws no light upon these questions. Any answers thereto would clearly be predicated upon speculation and conjecture alone.

It is our opinion that the doctrine of *res ipsa loquitur* was not applicable to the facts herein.

A very analogous case is *Tedrow* v. *Des Moines Housing Corp.*, 249 Iowa 766, 87 N.W. 2d 463, 86 A.L. R. 2d 830 (1958). The following passages from that opinion are certainly applicable here:

> ***the evidence which plaintiff thinks supports the application of the res ipsa loquitur doctrine and that which makes a jury question on the specific charge of negligence *** is the same. It appears that after the fire a fuse box was found in the ruins of the tavern portion of the building, which had contained nine fuse wells or sockets. The box was badly burned; but in each of three wells was found a one cent copper coin. Assuming that these coins had been there before the fire, the plaintiff builds his entire case upon them. He argues that pennies are commonly placed in electric sockets to replace fuses; that they are dangerous when so used, since a fuse will blow out when the circuit is overloaded, but a penny will not; and so the insulation may be burned from the electric wires and

a short circuit with a very hot electric spark may result. There is some evidence that when the fire was first discovered it was in the tavern portion of the building. There is also evidence from two experts that placing a penny in the fuse well to replace a fuse constitutes a fire hazard. * * *

The mere happening of a fire with the resultant injuries raises no presumption of negligence.***The burden is of course upon one who seeks to recover because of the negligent kindling of a fire to prove such negligence, and this is equally true whether he relies upon the evidentiary doctrine of res ipsa loquitur or upon specific acts. This is elementary. So the plaintiff here carried the burden of making a prima facie case.

We said in Dodge v. McFall, supra, page 14 of 242 Iowa, page 502 of 45 N.W. 2d: "To entitle a plaintiff to the benefit of the doctrine of res ipsa loquitur he must establish the way the injury occurred as well as defendant's control of the instrumentalities involved." Since plaintiff's case here goes no further than to show that there were coins in the well sockets which created a fire hazard, we must determine whether he has sufficiently shown the way the injury occurred. The doctrine of res ipsa loquitur does not avail him unless he has made such a showing. A much cited case on this question is Highland Golf Club of Iowa Falls, Iowa v. Sinclair Refining Company, D.C., 59 F. Supp. 911. There *** the court said, ***: "Apart from statute, the Courts have been very reluctant and sparing in drawing an inference of negligence from the starting of a fire." This, we think, is the general rule. There are of course cases involving fire damage in which the doctrine has been held available.***

But we are unable to find sufficient evidence of the manner in which the fire was kindled here to say that the requirement has been met. Giving the evidence the most favorable interpretation in favor of the plaintiff that it will reasonably bear, as we must, we are unable to find it creates a jury question as to what cause the injury. ***We may infer*** that wires led

from these sockets. But we do not know that these wires were ever overloaded; that they became heated, or cast off sparks, or made a short circuit in any way. Again quoting from the Highland Golf Club case, supra, at page 919 of 59 F. Supp.: "The courts recognize that fires are frequent occurrences and in a great many cases without any negligence on the part of anyone." While the plaintiff has shown a condition which could possibly have caused a fire, it is only conjecture that it did so. There is no evidence that the wires leading from the fuse box became overheated, or that they led to the point where the fire started, which is itself undisclosed except that it was somewhere in the tavern. The plaintiff's experts who were called to show that the use of coins in place of fuses makes a fire hazard would not say that the fire in question was caused by this condition. Zack Cook, employed in the office of the Iowa state fire marshal for 16 years, told of various other things that cause fires, such as "electric wiring, overheated motors, overloads and smouldering cigarettes depending on whether there is paper in a waste paper basket." He said that sometimes paper may smoulder for some time before it breaks out in flame. Lloyd Smith, an electric inspector for the city of Des Moines, said that whether the fuse box caused the fire or the fire destroyed the fuse box would be "just a guess." He also said that a short circuit might be caused by some thing other than a defective fuse; and that without knowing the nature of the short, and the circumstances and the material that may have been close by, there is no way of telling whether a fuse had anything to do with it or not.

Many things, among them accumulations of waste paper in buildings are known fire hazards, and are so considered by fire departments. Yet can we assume that, if such an accumulation of paper in the Ceretti tavern had been shown here, without anything more, it would have furnished the foundation facts for the application of the res ipsa loquitur doctrine? The question answers itself. In Starks Food Markets v. El Dorado Refining Company, 156 Kan. 577, 134 P. 2d 1102, 1105, the Kansas Supreme Court used this

apt language: "It is not only necessary to show that the offending instrumentality was under the management of the defendant, but it must be shown that it proximately caused the injury, or that the injury was caused by some act incident to the control of, the instrumentality."

***, we are still without anything to tell us where these circuits went, or whether they became overheated, or whether there was inflammable material near them. There is no evidence of the amount of the electric load required at the time the fire originated; that is to say, whether it would have been an overload on the particular wires leading from the sockets in which the pennies were found. The evidence to establish the manner in which the injury occurred need not be conclusive; it may be circumstantial; but it must arise above mere speculation. We are shown here something which, under certain circumstances, might be a fire hazard; as to whether those circumstances existed the record is wholly silent. The foundation facts for the application of the res ipsa loquitur doctrine are lacking.

Much the same reasoning applies to the matter of specific negligence pleaded ***. This also relies upon the three coins in the fuse wells. In order to make a jury question upon negligence, when the evidence is circumstantial, it must be such as to make the theory of the causation reasonably probable, not merely possible, and more probable than any other hypothesis based upon such evidence. *** We have nothing in the case at bar to show us that the fire originated along the lines of the wires connected to the coin-fortified fuse wells. The most we are told is that the fire was first discovered in the tavern portion of the building. But it may have originated from any one of many causes. Fires occur frequently, and often without negligence on the part of any one. The law rightly requires one who claims such negligence to prove it, by something which makes the theory reasonably probable. We find nothing here more than a possibility. The outbreak of the fire at the point where the fire

hazard would be expected to operate, *** is an element entirely lacking in the case at bar.

The impropriety of drawing an inference of negligence prior to the establishment of the cause of the fire was emphasized by the Kansas Supreme Court in *In Re Morse's Estate*, 192 Kan. 691, 391 P. 2d 117 (1964), in this language:

> That courts are reluctant to infer negligence from the starting of fires and that the doctrine here sought to be applied requires a clear showing by evidence of the thing or instrumentality involved is fully demonstrated in Wehkamp v. City of Garden City, [187 Kan. 310, 356 P. 2d 826] to which we adhere. In that case, quoting extensively from Emigh v. Andrews, 164 Kan. 732, 191 P. 2d 901, we stated and held:
>
> "In Emigh v. Andrews, ***, it was held that the doctrine of *res ipsa loquitur* is a rule of evidence and not of substantive law; that a *mere presumption* is *not* a thing that 'speaks for itself,' and that the established rule is that liability cannot result from an inference upon an inference or from presumption upon presumption. In the course of the opinion, speaking of the doctrine, it was said:
>
> " ' *** And that means the *thing or instrumentality* involved speaks for itself. It clearly does not mean the *accident* speaks for itself. It means that when the initial fact, namely what thing or instrumentality caused the accident has been shown then, and not before, an inference arises that the injury or damage occurred by reason of the negligence of the party who had it under his exclusive control. The inference of negligence arising from the initially established fact compels the defendant, in order to relieve himself of liability, to move forward with his proof to rebut the inference of negligence. It therefore quite properly has been said the doctrine of *res ipsa loquitur* is a rule of evidence and not of substantive law.' 164 Kan. at page 734, 191 P. 2d at page 903.

"It was further said:

" ' Apart from statute it appears courts are reluctant in drawing an inference of negligence *from the starting of fires* for the reason they are frequent occurrences and in many cases result without negligence on the part of anyone. (Citing) *** These cases are not essential to a decision in this case and we cite them only for the purpose of indicating some of the dangers which might exist in drawing an inference of negligence *prior to the establishment of the cause of the fire.* In other words, according to these authorities, it would appear the rule prohibiting recovery by basing an inference on another inference or presumption has peculiar force in the case of fire.' 164 Kan. at page 736, 191 P. 2d at page 904. (Emphasis supplied.)

***

"Measured by the foregoing rules relating to the application of the doctrine of *res ipsa loquitur*—and particularly with respect to fires—we have no difficulty in concluding that plaintiff's evidence fell far short of making out a case sufficient to go to the jury. All of the evidence—as abstracted—has been set out. Nowhere do we find any evidence of 'attendant circumstances' from which it reasonably may be inferred that the loss occurred *only* because of negligence on the part of defendant city or its employees. In fact, the most that can be said of the evidence is that it merely establishes that on the night in question fire of undetermined origin destroyed the hangar and the airplane which was stored therein. The cause of the fire is left entirely to *conjecture* which, under the authorities, is insufficient to bring the case under *res ipsa loquitur.*" (187 Kan. pp. 315, 316, 356 P. 2d 831.)

The foregoing cases from other jurisdictions are in harmony with our own decisions on the doctrine of res ipsa loquitur. The California case from which a quotation is inserted in the majority opinion was from an intermediate

appellate court. In that case the evidence showed that the gasoline tank of at least one or two motor vehicles was within 20 feet of an office heater and that the caps on gas tanks permitted the escape of vapors, which were flammable at temperatures ranging down to 52 degrees below zero. The fire chief testified that: the most probable fuel involved in the fire was gasoline vapor, which tends to remain along the floor of a building; there was strong physical evidence that the fire started close to the floor; that it was probable that a slight draft created by either the pilot light of the heater or its burner, or both, drew the vapors along the floor to the heater, causing a flashing explosion which carried the flame back along the path of the vapors to the greater accumulation of vapors under the vehicles, and this caused the greater amount of fire damages in the garage portion of the building. The court said that the testimony conflicted as to the the probable cause of the fire and the finder of fact could have determined it either way. That court then recognized that there was a burden upon the plaintiff to establish the probable cause of the fire. The California rule is really not different from that of our own and of other jurisdictions. In *Gentleman* v. *Nadell & Company,* 197 Cal. App. 2d 545, 17 Cal. Rptr. 389 (1961), the same district court said:

> The appellant argues that her case was aided by a doctrine akin to that of res ipsa loquitur. But such argument does not advance the appellant's position. It is clear that the trier of fact was free to draw the inference that the cause of the fire was undetermined. Under such circumstances, the doctrine of res ipsa loquitur would not have been applicable in a case based upon negligence. In Brocato v. Standard Oil Co., 164 Cal. App. 2d 749, at page 757, 331 P. 2d 111, at page 116, it is said: "The doctrine of res ipsa loquitur never has been regarded as a substitute for satisfactory proof of causation. As stated in 65 C.J.S. Negligence § 220, p. 1010: ' *** there can be no foundation for the application of the doctrine where the physical act or thing which caused the injury is unknown or not disclosed or identified. Accordingly, it has been held that the doctrine is inapplicable where the injury might have been brought about by one of

two or more causes, neither of which is included or excluded by any affirmative evidence. ' " \*\*\* There is no sound basis for a contention that the fact of the storage of some imflammable materials and the fact of a subsequent fire were together sufficient, in and of themselves, to give rise to an inference as to causation in the nature of the inference which comes into being where the doctrine of res ipsa loquitur is applicable.

I would reverse the judgment. Since I am unable to say that the deficiency in the evidence cannot be supplied I would remand the case for a new trial.

I am authorized to state that Mr. Justice Byrd joins in this dissent.